UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY CYGAN,

       Plaintiff,                   CIVIL ACTION NO. 14-cv-14356

       v.                            DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gary Cygan seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff has also filed a response to Defendant's Motion. (Docket no. 16.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 15) be DENIED. It is further recommended that this

matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for proper consideration and discussion of whether Plaintiff's impairments meet or medically equal a listed impairment under 20 C.F.R. Part 404 Subpart P, Appendix 1.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of June 28, 2011, alleging that he has been disabled since September 14, 2010, due to pain, degenerative disc disease in his cervical spine, neck pain, leg pain, pain and cramping in his arms and hands, a lack of strength in his hands, migraines, chronic obstructive pulmonary disease (COPD), bowel problems, and a history of seizures. (TR 123-29, 151, 162.) The Social Security Administration denied Plaintiff's claims on September 21, 2011, and Plaintiff subsequently requested a *de novo* hearing. (TR 50-62, 75-76.) On April 25, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Roy L. Roulhac. (TR 23-49.) In a May 16, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 10-19.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Defendant (docket no. 15 at 4-8) and the ALJ (TR 14-17) each set forth a detailed, factual recitation with regard to Plaintiff's medical record. Plaintiff discussed portions of his medical record throughout his brief. (Docket no. 14 at 6-12.) Having conducted an independent review of Plaintiff's medical record, the undersigned finds that there are no material inconsistencies among the aforementioned recitations of the record. Therefore, the undersigned will incorporate

2

these factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 14, 2010, and that Plaintiff suffered from the following severe impairments: back disorder, COPD, and carpal tunnel syndrome. (TR 12.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 13.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that the claimant requires a sit/stand option, to be used as much as every 30 minutes. The claimant can occasionally climb ramps and steps, balance, stoop, kneel, crouch, and crawl. The claimant should avoid repetitive use of his bilateral upper extremities. The claimant should avoid unprotected heights, vibratory tools, and moving machinery. The claimant should avoid concentrated exposure to dusts, fumes, gases and chemicals.

(TR 13-17.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 18-19.) The ALJ then concluded that Plaintiff was not disabled under the Social Security Act at any time from September 14, 2010, through the date of the ALJ's decision. (TR 10, 19.)

### V. LAW AND ANALYSIS

#### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

    **B.**    **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded for further consideration under sentence four because (1) the ALJ did not adequately address whether one of Plaintiff's impairments met or medically equaled the Listing of Impairments in his decision; and (2) the ALJ's assessment of Dr. M. Sohail Jilani, M.D.'s opinion is not supported by substantial evidence. (Docket no. 14 at 6-12.)

### 1. *The ALJ's Step-Three Determination*

Plaintiff challenges the ALJ's assessment of Plaintiff's impairments under the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Docket no. 14 at 6-8; docket no. 16 at 1-3.) At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Accordingly, the ALJ's analysis at this step must be evaluated in light of

the evidence set forth by the claimant; the analysis need not be extensive if the claimant fails to produce evidence that his or her impairment meets a listing. *Beden v. Comm'r of Soc. Sec.*, No. 2:14-CV-14727-MAG-PTM, 2015 WL 5965006, at *13 (E.D. Mich. Sept. 18, 2015), report and recommendation adopted, 2015 WL 5936324 (E.D. Mich. Oct. 13, 2015) (citations omitted).

The ALJ's step-three analysis, in its entirety, is as follows:

> Although the claimant has the severe impairment(s) listed above, the impairments, or combination of impairments, do not meet or medically equal the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. This finding is supported by the medical opinion of the State Agency and consultative physicians, all of whom considered the relevant Listings.

(TR 13.) Plaintiff asserts that the ALJ's "bare conclusion" and one-sentence rationale is insufficient under *Reynolds, supra*. Plaintiff also asserts that the ALJ's rationale is inadequate because the state-agency physician's opinion is not based on the entire record and because the record does not contain any consultative examination reports. (Docket no. 14 at 6-8; docket no. 16 at 1-3.) Defendant concedes that there are no consultative physician assessments in the record but argues that Plaintiff's argument is undeveloped and that any error committed by the ALJ in his analysis is harmless and insufficient to warrant remand. (Docket no. 15 at 9-12.)

Indeed, Plaintiff's argument is undeveloped insofar as he does not indicate what listing(s) the ALJ should have considered until his brief in response to Defendant's Motion, in which he suggests that the ALJ should have evaluated the same listings that the state-agency physician evaluated: Listing 1.04, Disorders of the spine, and Listing 3.02, Chronic pulmonary insufficiency. (Docket no. 16 at 2.) Moreover, Plaintiff does not identify any record evidence in his briefs that tends to support a step-three determination in his favor. Similarly, Defendant does not develop, and Plaintiff does not respond to, Defendant's allegations of harmless error. Thus, the Court will address this issue based on its independent review of Plaintiff's medical record.

7

In *Reynolds,* the Sixth Circuit held that as part of a Step-Three analysis, an ALJ must analyze the claimant's impairments and provide an analysis to explain his conclusion that the claimant did not meet or medically equal the listing. *Id.*, 424 F. App'x at 415. The *Reynolds* court found that the ALJ, in failing to provide any assessment of the evidence pertaining to Listing 1.04, essentially skipped an entire step of the sequential analysis. *Id.* at 416. Further, the court found that the error was not harmless because a finding that a person meets a listed impairment immediately qualifies her as a disabled individual and entitles her to benefits, and because it was possible that the evidence set forth by the claimant could meet the listing. *Id.* The court concluded that "the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.*

Here, in reaching the conclusion at Step Three that Plaintiff's physical impairments did not meet or medically equal a listed impairment, the ALJ neither demonstrated that he considered the record evidence nor did he show that he compared Plaintiff's impairments to any relevant listing. Moreover, the ALJ did not offer any analysis with regard to how he reached such a conclusion other than to claim that his finding is supported by the opinions of the state-agency and [concededly non-existent] consultative physicians. An ALJ's perfunctory explanation that his Step-Three finding is consistent with or supported by the state-agency physician's opinion, standing alone, is insufficient to cure the ALJ's failure to cite, discuss, or resolve conflicts in the evidence at Step Three. *M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 857-59 (E.D. Mich. 2012) (citing cases). Without an adequate discussion from the ALJ, "it is impossible to say that the ALJ's decision at Step Three [i]s supported by substantial evidence."

8

*Reynolds*, 424 F. App'x at 416; *see also Christephore*, 2012 WL 2274328, at *7 ("The ALJ's perfunctory analysis of [the plaintiff's] physical impairments at Step Three is beyond meaningful review.").

As Defendant points out, however, the Court may overlook this procedural error as harmless if the same outcome would have resulted had the ALJ performed a more rigorous analysis at Step Three. (Docket no. 15 at 9-10 (citing *M.G. v. Comm'r*, 861 F.Supp.2d at 859-61 (citing *Reynolds*, 424 F. App'x at 416; *Rabbers,* 582 F.3d at 654, 656-57; *Juarez v. Astrue,* No. 2:09–cv–160, 2010 WL 743739, at *5–6 (E.D. Tenn. Mar. 1, 2010))).) To make this determination, a review of the record evidence in conjunction with the listings is necessary. With regard to Listing 3.02, the record evidence relevant to this listing is dated August 31, 2010, prior to the alleged onset date, in which Plaintiff's reported $FEV_1$ and FVC values of 3.04 liters and 4.92 liters, respectively, are not equal to or less than the values necessary to meet the listing requirements. (*See* TR 333, 344.)

With regard to Listing 1.04, however, the record evidence indicates that Plaintiff suffers from spinal stenosis, a limited range of motion, neuropathy, and chronic pain post cervical fusion surgery. (*See, e.g.,* TR 370-71, 379-80, 409.) In light of this evidence, it is possible that Plaintiff's back disorder could meet or medically equal the Listing, particularly Listing 1.04A, which contemplates disorders of the spine that result in compromise of a nerve root or the spinal cord, with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A. While Defendant may be able to point to evidence to suggest otherwise, as discussed *supra*, it is not the Court's role to reweigh or resolve

9

conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). Such is a task more appropriately undertaken by an ALJ.

For the reasons stated above, the ALJ's failure to review and discuss the aforementioned evidence at Step Three of the sequential analysis and provide an explanation as to how it compares to a listed impairment is not harmless, and it warrants remand. Therefore, it is recommended that Plaintiff's Motion be granted and this matter be remanded for purposes of determining whether Plaintiff's impairments meet or medically equal a listed impairment under 20 C.F.R. Pt. 404 Subpt. P, App. 1.

### 2. *The ALJ's Assessment of Dr. Jilani's Opinion[1]*

Next, Plaintiff challenges the ALJ's assessment of Dr. Jilani's opinion. (Docket no. 14 at 8-12; docket no. 16 at 3-5.) Plaintiff was referred to Dr. Jilani by his neurosurgeon, Dr. Gerald R. Schell, M.D., for an electrodiagnostic evaluation and consultation for the bilateral upper extremities on June 14, 2011, and a consultation for disability evaluation on March 26, 2013. (TR 379-80, 417-20.) On March 26, 2013, Dr. Jilani examined Plaintiff, noted that Plaintiff was applying for disability and having some depression and anger issues, and opined that Plaintiff was "unable to do any kind of productive work at [that] time because of his chronic pain." (TR 418.) Dr. Jilani also completed a medical assessment form regarding Plaintiff's ability to perform physical work-related activities on April 4, 2013. (TR 413-16.) The parties do not dispute that Dr. Jilani was not Plaintiff's treating physician. In fact, Plaintiff concedes that Dr. Jilani was an examining source and that his opinion is entitled to less weight than that of a treating source. (Docket no. 14 at 9.) Nevertheless, Plaintiff argues that the ALJ's reasoning for his determination to give Dr. Jilani's opinion "very little weight" consisted of misstatements and

---

[1] The ALJ's assessment of Dr. Jilani's opinion may change upon remand, yet the undersigned will address Plaintiff's instant claims of error.

false statements. (*Id.* at 10-12.) Plaintiff's assertion implies that the ALJ intentionally mischaracterized and falsified the record evidence to reach a predetermined conclusion. This is a very bold accusation.

"When no treating physician opinion has been granted controlling weight ... the medical opinion of a consultative examiner is to be weighed considering all of the factors identified in 20 C.F.R. § 404.1527(c)(1) through (6)." *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(iii)). Nevertheless, there is no per se rule that requires an articulation of each of the six regulatory factors. *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).

Here, the ALJ briefly summarized the records submitted by Dr. Jilani and opined as follows:

> With respect to the above-referenced statement, it [is] not clear if Dr. Jilani was referring to the definition of 'disability' contained in the Social Security Act, when he suggested that the claimant is "unable to do any productive work." In fact, it is entirely possible that Dr. Jilani was referring solely to the claimant's inability to perform past work, which is consistent with the conclusions reached in this decision. Moreover, that the claimant's statement to Dr. Jilani that "nothing makes his symptoms better," is entirely inconsistent with his recent representations to Dr. Reitner, in which he reported that the [F]entanyl patch significantly reduced his symptoms, with no side effects. Although not reflected in the record, it is plausible that the claimant's prescription for the [F]entanyl patch was discontinued, based upon his continued daily use of marijuana. Finally, I note that Dr. Jilani's [sic] is not currently treating the claimant, and that he prepared the medical source statement specifically upon the claimant's request, in connection with his underlying application and appeal. In light of these consideration[s], I give very little weight to Dr. Jilani's statements, finding the objective medical evidence has significantly more probative value.

(TR 16.)

First, Plaintiff argues that the ALJ "deliberately created a nonexistent ambiguity" in Dr. Jilani's opinion to avoid giving it the appropriate weight by stating that it was unclear whether

11

Dr. Jilani was referring to the Social Security Act's definition of disability or Plaintiff's inability to perform past work. (Docket no. 14 at 10-11.) Plaintiff's argument sounds in speculation, which the Court will not entertain. There is no basis that the ALJ's finding of such an ambiguity is anything but legitimate. Ambiguous or not, Dr. Jilani's opinion is essentially a determination that Plaintiff is disabled, and it is well settled that the ultimate issue of disability is reserved to the Commissioner. *Kidd v. Comm'r*, 283 F. App'x 336, 341 (6th Cir. 2008). Plaintiff's claim fails in this regard.

Because Dr. Jilani was not a treating medical source and because Dr. Jilani's opinion that Plaintiff is disabled is an issue reserved to the Commissioner, the ALJ was not required to give full weight to his opinion. In the event that a medical source has provided an opinion on an issue reserved to the Commissioner, an ALJ is required to evaluate the record evidence to determine the extent to which the opinion is supported by the record but is precluded from giving the opinion special significance. SSR 96-5p, 1996 WL 374183, at *3. Here, the ALJ assigned Dr. Jilani's opinion very little weight not only because he found it to be ambiguous, but because he found that the subjective complaints that Plaintiff made to Dr. Jilani were inconsistent with Plaintiff's treatment records and because Dr. Jilani's opinion was made upon Plaintiff's request in connection with his instant disability application and appeal. (TR 16.)

Plaintiff argues that the ALJ "falsely claimed" that Plaintiff's statement to Dr. Jilani is entirely inconsistent with his recent representations to Dr. Reiter. (Docket no. 14 at 11 (citing TR 16).) A review of the record reveals that Plaintiff told Dr. Jilani that "nothing makes [his] symptoms better" on March 26, 2013. (TR 418.) The record also reveals that Dr. Scott Reiter, D.O. prescribed a Duragesic patch to Plaintiff in lieu of narcotic pain pills on September 7, 2012. (TR 403-04.) At a follow-up appointment with Dr. Reiter on September 21, 2012, Plaintiff

reported that he was happy with the patch, that he was not having any side effects, and that his pain level was at a three to four out of ten. (TR 403.) Dr. Reiter then increased the dosage of medication in the patch at Plaintiff's request. (TR 403.) Two weeks later, on October 5, 2012, Plaintiff told Dr. Reiter that he had noticed significant improvement in his pain since starting on the patch and a little bit more improvement since increasing the dosage. (TR 402.) Plaintiff further explained that his pain level was much improved, but not completely gone. (TR 402.) On January 15, 2013, Dr. Reiter reported that Plaintiff had decided that he would rather continue smoking marijuana than continue to take the Duragesic patch. (TR 401.) This summary of the relevant record evidence demonstrates that the ALJ's finding of inconsistency is not a "false claim," as Plaintiff insists; rather, it is an accurate depiction of the record evidence.

While Plaintiff disagrees with the ALJ's finding of inconsistency and points to some evidence to support his statement to Dr. Jilani, the ALJ's opinion is also supported by substantial evidence. Essentially, Plaintiff is inviting the Court to reweigh the evidence and substitute its own judgment for that of the ALJ, which is not within this Court's purview. *See Brainard,* 889 F.2d at 681. The ALJ's determination that the subjective complaints Plaintiff made to Dr. Jilani were inconsistent with Plaintiff's treatment records falls within his zone of choice and should not be disturbed.

Finally, Plaintiff argues that while the ALJ denigrated Dr. Jilani's opinion on the basis that it was prepared at Plaintiff's request in connection with Plaintiff's disability application and appeal, the ALJ ignored the fact that Dr. Jilani conducted the examination on referral from Dr. Schell and that Dr. Jilani had previously examined Plaintiff for the very same conditions. (Docket no. 14 at 12.) The ALJ, however, did consider Dr. Jilani's June 14, 2011 examination of Plaintiff. (TR 15.) Moreover, Plaintiff's argument regarding the ALJ's failure to mention Dr.

13

Schell's referral of Plaintiff to Dr. Jilani fails because it is axiomatic that an ALJ need not discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted). Furthermore, as Defendant argues, the ALJ's failure to note that Dr. Schell referred Plaintiff to Dr. Jilani is of little import; it was Plaintiff who asked Dr. Schell about disability and seemingly, Dr. Schell in turn referred Plaintiff to Dr. Jilani. (Docket no. 15 at 14 (citing TR 389).) The ALJ's failure to note Dr. Schell's referral does not invalidate the ALJ's reasoning for discounting Dr. Jilani's opinion on the basis that it was prepared in connection with his disability application. The undersigned finds that the ALJ did appropriately note, discuss, and explain why he did not fully credit Dr. Jilani's opinion. It is, therefore, recommended that Plaintiff's Motion be denied with regard to the ALJ's assessment of Dr. Jilani's opinion.

## VI. CONCLUSION

For the reasons stated herein, the Court should GRANT IN PART and DENY IN PART Plaintiff's Motion for Summary Judgment (docket no. 14) and DENY Defendant's Motion for Summary Judgment (docket no. 15). This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for proper consideration and discussion of whether Plaintiff's impairments meet or medically equal a listed impairment under 20 C.F.R. Pt. 404 Subpt. P, App. 1.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: December 21, 2015                s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: December 21, 2015                s/ Lisa C. Bartlett
                                        Case Manager